(58 South. 636.)

No. 18,648.

LIQUIDATORS OF STATE NAT. BANK v. HART.

(April 22, 1912. Rehearing Denied May 20, 1912.)

*(Syllabus by the Court.)*

PLEDGES (§ 56*) — ENFORCEMENT — SALE TO PLEDGEE.

Where, under a contract of pledge, the pledgee is authorized, upon the failure of the pledgor and debtor to pay the debt on demand, or make good the margin, to sell the collateral, he is not thereby authorized to sell to himself; and, though he may make the demand and go through the form of such sale, and may notify the pledgor that the collateral has been sold, it operates no change of title, and the collateral remains the property of the pledgor, subject to the conditions of the pledge. But where, in such case, the pledgee afterwards sells the collateral to a third person, the sale is valid, and the pledgor is entitled to have the proceeds attributed to his debt; but he is not entitled to recover damages as for an unlawful conversion, or otherwise, unless he can show that he was misled, to his prejudice, by the notice given him of the first attempted sale.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 152–183; Dec. Dig. § 56.*]

Provosty, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by the Liquidators of the State National Bank against Samuel J. Hart. From a judgment for plaintiffs, defendant appeals. Affirmed.

Howe, Fenner, Spencer & Cocke, for appellant. W. S. Parkerson and Sterling Parkerson, for appellees.

### Statement of the Case.

MONROE, J. Defendant appeals from a judgment rendered against him on a promissory note for $25,000, with interest, less certain credits amounting to $17,500. He filed several exceptions, which were overruled, and which are not here insisted on, after which he answered, admitting that he executed and negotiated the note sued on, but alleging that he pledged 30 first mortgage bonds of the Consumers' Electric Company, of $1,000 each, to secure payment of the same, and that plaintiffs pretended to sell said bonds on the floor of the Stock Exchange and buy them in at a vile price, after which they converted them to the use of the bank of which they are liquidators, and sold them for a much higher price, all illegally and without the notice to which he was entitled. He alleges that plaintiffs or their assigns also converted three matured coupons on each of said bonds, amounting,

in the aggregate, to $2,250, and that he is entitled to restitution in the sum of $32,250, with interest, for which he prays judgment.

The note bears date March 15, 1906, is made payable, on demand, to the order of the maker at the State National Bank, and bears upon its face the stipulation:

"This note is secured by pledge of the securities mentioned on the reverse hereof, and, in case of its nonpayment, on demand, or, should the drawer hereof, when called on, refuse or fail to keep the margin hereon good, the holder is hereby authorized to sell the said securities, at public or private sale, without recourse to legal proceedings, and to make any transfers that may be required, applying the proceeds of sale towards the payment of within note. [Signed] Samuel J. Hart."

On the reverse, there appears:

"Secured by thirty (30) one thousand dollar first mortgage, 5%, gold bonds of the Consumers' Electric Company, Nos. 701 to 730, inclusive. [Signed] Samuel J. Hart.
"Interest paid to April 30th.
"Interest paid to May 31st, 1906.
"Interest paid to February 28th, 1907."

The affairs of the bank were placed in the hands of a committee of the clearing house as early as January 9, 1908, and the members of that committee were, later in the month, elected liquidators. On the date mentioned, the chairman of the committee addressed a letter to plaintiff, as follows:

"Dear Sir: Referring to your demand note for $25,000, which has been protested for nonpayment, we beg to notify you that, if this note is not paid by 10 o'clock Monday morning next, we will be obliged to sell the collateral, holding you for the balance due on the note after the amount realized from the collateral has been applied thereagainst."

Defendant paid no attention to the notice thus given, and the committee, through a broker, offered the bonds for sale on the Stock Exchange, day after day, for several days, and at lowering prices, but received no bid. They then instructed the broker to sell them for what they would bring, and at the same time employed another broker, whom they instructed to buy the bonds in, unless some third person should offer more

than 25 cents on the dollar for them; and, there being no other offer, the broker so employed, on January 16, 1908, bid in the bonds for the committee at 10¼ cents on the dollar. On January 21st following the vice president of the bank addressed a letter to defendant, reading:

"Dear Sir: Referring to your demand note dated March 15, '06, for $25,000, secured by $30,000 bonds of the Consumers' Electric Co., for which legal demand was made upon you, we beg to advise that, under the terms of the pledge, the said $30,000 bonds have been sold, at public sale, at 10¼ less ⅛ brokerage, and the proceeds, $3,037.50, have been credited on your obligation, designated above. We now call on you for payment of the balance due on said obligation, with interest."

Plaintiff paid no more attention to the notice thus given than he had to the other; the fact being that there had been something of a panic in the business world during the last few months of the year 1907, and that the bond and stock market was still very weak, while money was in demand and not easy to get. The bank was regularly placed in the hands of liquidators on January 30, 1908. The Consumers' Electric Company went into the hands of a receiver in April following; and on April 9, 1909, the liquidators of the bank sent a written notice to the defendant that, unless he arranged for the payment of his obligations held by them, they would be put in the hands of an attorney for collection; and in May, 1909, this suit was brought.

Thereafter the bonds in question became more valuable, bringing 88 in December, 1909, and 90 at a later date.

### Opinion.

The judge a quo was of opinion that the bidding in of the bonds by the broker employed by the clearing house committee operated no change in the title, but that the sale of December 8, 1908, was valid, and held that, for the purposes of this case, plaintiff should account for the $15,000 received

as the price, and also for $2,250 of interest collected; and we are of the same opinion. The bonds continued to be the property of the defendant, notwithstanding the stock exchange transaction of January 16, 1908; but they were still subject to the conditions of the pledge, and the pledgee, not having done so, had the right to make a valid sale of them, which it did some 11 months later, after having made another demand (on January 21, 1908) for the payment of the debt for which they were pledged.

Counsel for defendant argue that:

"By reporting the pretended sale on the Stock Exchange to the defendant, and by leading him to suppose that they had made a valid sale of his securities under the terms of the contract of pledge, the bank disentitled itself to the right to make another sale of the securities, without notice to him that it still held his bonds as pledgee, and without making a new demand on him for the payment of the note."

The argument would be entitled to serious consideration, if there had been any attempt to show that defendant was misled, to his prejudice, by the notice of January 21st, and that, if he had known that the bonds had not actually been sold, he could, and would, have redeemed them. But there has been no such attempt; and it is not even suggested that he was any more able to pay the debt due the bank in December, when the bonds were really sold, than he had been 11 months before, when they were said to have been sold. The notice of January 9th informed him that the bonds would be sold, unless he paid by the next Monday; and the bank had the right to sell them at any time after the expiration of that delay. If it had, of its own motion, or upon advice of its counsel, concluded that there was no sale on January 16th, and had then, without further notice to defendant, made the actual sale which was made on December 8th, following, it could hardly be contended that defendant would have any cause of complaint. What he complains of, therefore, is, not that a demand for the payment of the debt was not made, and not that the bank went through the idle form of selling the bonds to itself, but that it gave him notice that it had sold them, when, in law, it had not, but still held them. There was no bad faith in the matter, however, and the bank was in trouble and needed the money that defendant owed, and the committee felt it to be its duty to collect it, and defendant, being unable to pay, had no right to expect, and did not expect, that the bonds would be held after 10 o'clock on the Monday morning following the demand for payment. What the bank did, short of selling the bonds, after the hour and up to the sale which it had the right to make, whether in January or December, is therefore wholly negligible, save in so far as its action may have misled defendant, to his prejudice; and we do not find that he was prejudiced by anything that was done.

In the case of Maryland Fire Ins. Co. v. Dalrymple, 25 Md. 242, 89 Am. Dec. 779, Dalrymple sued for damages for alleged illegal sale and conversion of stock of the B. & O. R. Co., and it appeared that the insurance company, to which the stock was pledged, notified him, in November, 1860, of its intention to sell, and, having gone through the form of a sale to itself, notified him that the stock had been sold, and thereafter, in 1,862, actually sold it to third persons; whereupon, in December, 1862, Dalrymple tendered payment of his debt and demanded the stock, and, failing to get it, brought his suit. The court held, as does this court, that the transaction, purporting to be a sale by the company to itself, operated no change of title, and that, if nothing more had been done, the demand made in December, 1862, would have been well founded.

"But [continues the opinion] it appears from the proof that before that time, in the spring of 1862, the defendant caused the stock to be sold publicly at the board of brokers; and it

was transferred to the several purchasers. What was the effect of those sales? Having been given notice to pay the loan in November, 1860, the defendant was not bound to keep the pledge; the attempted sale of the 20th of November being inoperative, and the plaintiff continuing in default, the power to sell conferred by the contract still continued, and was, in fact, exercised by the sales made in 1862. As we have already said, no further notice was required by the contract, nor can any valid objection be made to the place and mode of sale; the same not being impeached on the ground of unfairness or bad faith."

And it was held that, in a proper action, Dalrymple would have been entitled to recover from the proceeds of the sale made at the board of brokers any excess, if any there had been, over the amount required to pay his debt.

The liquidators by whom this suit was brought have been succeeded by Messrs. Louis Kohlman, Charles A. Morgan, and Warren Kearny, and the persons named have been made parties hereto.

It is therefore ordered, adjudged, and decreed that they, Louis Kohlman, Chas. A. Morgan, and Warren Kearny, be recognized as authorized to stand in judgment, and that the judgment appealed from be affirmed.

See dissenting opinion of PROVOSTY, J., 58 South. 638.